LINO MANCEBO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mancebo v. Commissioner
Docket No. 3997-74.
United States Tax Court
T.C. Memo 1975-338; 1975 Tax Ct. Memo LEXIS 41; 34 T.C.M. (CCH) 1472; T.C.M. (RIA) 750338; November 10, 1975, Filed *41 Lino Mancebo, pro se. David M. Berman, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined deficiencies in petitioner's 1970 and 1971 income taxes in the amounts of $1,356.54 and $1,308.54, respectively. At issue is the availability of deductions based upon carryovers of an alleged $325,000 Cuban confiscation loss which petitioner claims occurred after he became a resident alien of this country in October, 1960. A stipulation of facts filed by the parties is incorporated herein by this reference. Additional facts set forth herein are based upon evidence presented at the trial. The parties are in agreement that the only loss involved is the one relating to petitioner's interest in a Cuban partnership known as Mancebo y Hermano. The Government contests the carryovers on three separate grounds: (1) that no deduction is allowable because the loss occurred prior to petitioner's becoming a United States taxpayer and resident of this country on October 15, 1960; (2) that petitioner has failed to establish his adjusted basis in the partnership at the time of confiscation; and (3) that petitioner in any event *42 has failed to make the timely (on or before December 31, 1965) election required by section 172(b)(3)(C)(iii) of the Code. We received evidence as to all three of these issues, and, although the matter may not be free from doubt, we think that the evidence could support findings in petitioner's favor on the second and third points, namely, that petitioner's adjusted basis in the partnership was sufficient to support the claimed deductions here in issue, and that he had in fact filed the required election before December 31, 1965. However, petitioner cannot prevail because, in our view of the record, the confiscation by the Cuban government took place prior to October 15, 1960. The partnership in question was founded in 1909 by petitioner's father and uncle. Petitioner became an employee of and subsequently acquired an interest in the enterprise, at first limited to a one-fourth share of the profits, and later enlarged to include an interest in the capital as well. His interest in the capital was based upon an initial investment of $25,000 which was thereafter augmented by that portion of his share of the earnings that remained unwithdrawn from the enterprise. The business of the *43 partnership encompassed a wide range of activities relating to coffee, sugar, warehousing and cattle; it was a business of considerable magnitude. In addition to participation in the affairs of the partnership, petitioner was also a member of the Cuban legislature. He was strongly anti-communist. When Castro came to power in January, 1959, petitioner, fearing for his life, became a fugitive, hiding in various parts of the island. He sought refuge in the Venezuelan embassy, and was finally given sanctuary in the Mexican embassy, where arrangements were made for him to go to Mexico. He went to Mexico in October of 1959, and about one year later, on October 15, 1960, entered the United States. Meanwhile, petitioner was listed by name in the February 1, 1960, June 10, 1960, and August 26, 1960, issues of the Cuban government's Official Gazette as a person whose properties had been confiscated. Also, the June 10, 1960, issue of the Official Gazette named the Mancebo y Hermano partnership as an organization whose properties were confiscated. And the evidence shows not only that "intervenors" were placed in the partnership business shortly after the Castro regime took over in January, 1959, *44 but also that petitioner received no earnings thereafter from the enterprise. Petitioner seeks to avoid the obvious consequences of the foregoing acts and decrees on the ground that they falsely recited that the persons listed were guilty of "illicit enrichment or embezzlement of public interest * * * while carrying on their jobs * * *". In support of that position he presented evidence to the effect not only that the confiscations were contrary to the Cuban Constitution of 1940, but also that a proceeding was instituted on his behalf in the Supreme Court of Cuba contesting the confiscations, a proceeding in which that court never rendered any decision. In substance, petitioner would have us ignore these notices of confiscations published in the Official Gazette and look instead to alleged subsequent confiscation of his property based on the general provisions of Cuban Law 989, which was promulgated on December 5, 1961, after he became a resident of the United States. Notwithstanding petitioner's sincere and vigorous protests about the alleged illegality of the acts of the Cuban government referred to in the foregoing issues of the Official Gazette of Cuba, we are satisfied on *45 the record before us that petitioner was realistically and effectively deprived of his property interests in the partnership prior to his becoming a resident alien in this country. We find and hold that petitioner's confiscation loss in fact occurred prior to his coming to the United States. It was the fact of confiscation not the legality thereof that gave rise to his loss. The appeal to the Supreme Court of Cuba was plainly a futile gesture. We need not prolong this unhappy discussion. Petitioner in fact sustained his loss prior to October 15, 1960, and it therefore cannot furnish the basis for carry-overs to the years here in issue. Cf. (C.A. 5); . Decision will be entered for the respondent.